**C. C. BOYD, Sr., Plaintiff,**

v.

**AETNA INSURANCE COMPANY, Hartford, Connecticut, a corporation, Defendant.**

Civ. No. 431.

United States District Court
S. D. Florida,
Ocala Division.

Oct. 3, 1960.

Walter Warren, Leesburg, Fla., for plaintiff.

Gurney, McDonald & Handley, Orlando, Fla., for defendant, Aetna Insurance Co.

SIMPSON, District Judge.

This cause having been tried by the Court, without a jury, the Court, pursuant to Rule 52(a) F.R.Civ.P., 28 U.S.C.A., makes the following

### Findings of Fact.

1. The plaintiff, C. C. Boyd, Sr., is a citizen of the State of Florida, and the defendant, Aetna Insurance Company, is a corporation, incorporated under the laws of the State of Connecticut, with its principal place of business therein. The matter in controversy exceeds the sum of $10,000.

2. On July 17, 1958, the defendant issued to plaintiff its policy (No. S39 24 48) of fire insurance in the amount of $12,500 on plaintiff's dwelling, located on State Road 19 between Groveland, Lake County, Florida, and U. S. Highway 27, about six miles north of Groveland. Under the same policy, defendant insured the furniture and personal property which were the contents of said dwelling. The amount of said coverage, with subsequent endorsements, was $5,000. This location was a rural, "unprotected" area, and the premium charged recognized this factor of risk.

3. On August 12, 1959, the insured dwelling burned and all the contents were totally destroyed. The dwelling, purchased by plaintiff as a small cabin in 1957, and extensively rebuilt by him, was of concrete block with an asphalt

roof. At the time of its destruction its value was in excess of the $12,500 policy amount. All premiums due had been paid at the time of the fire.

4. About a week before the fire, probably on August 7th or 8th, plaintiff's wife left by bus on a visit to North Carolina. In the week preceding the fire plaintiff was seen moving furniture in a small truck to his nearby packing house; by his admission at least three such trips were made. On the 12th, plaintiff was planning to leave on a trip with a friend to Tennessee. Finding his car battery weak, he called for assistance and the car was serviced by Mr. Story, who in addition to running a service station, was chief of the volunteer fire company in Groveland. No fire was apparent at this time. Plaintiff was able to leave on his trip by 3:00 p. m. or shortly thereafter. The fire was reported by a neighbor at about 3:30 p. m. and the Groveland volunteer fire company responded to the call.

5. When the firemen arrived they looked through all windows and found no flames, but only wisps of smoke escaping through ventilators beneath the eaves. They saw only a small amount of furniture. At this point the fire could have been extinguished easily except that the firemen were deterred from entering the house by several signs on the doors which warned: "Beware of trap gun in this House." Thereafter the firemen retired, sought instruction, and were ordered not to attempt any entry. After a short wait they left the scene and the entire house eventually burned by about 5:45 p. m. The Court finds that but for the presence of the signs the damage to building and contents would have been slight, probably less than $500. The adjustor, Spencer, who settled about 200 fire losses monthly in this section, testified that 60% of such losses were $300 or less, and that only 10% exceeded $5,000.

6. The "trap gun" signs had been placed on the house in several places by plaintiff and were handwritten in pencil on ordinary unruled note paper about 5″ x 7″, thus requiring occasional re-placement. Plaintiff had used similar signs in the past, to the knowledge of some few persons in the vicinity. Plaintiff testified that the signs were intended as a bluff for burglars, but it was not widely known that no trap guns were really within the house. The existence of the signs and their purpose was unknown to the defendant insurance company. No notification about the signs had ever been made to the Chief of the fire company or his assistant, although both were widely known as such in the locale.

7. While plaintiff's wife estimated the contents of the house to be between $6,000 and $7,000 in value, (listing the cost a year or so earlier at $7,418.90), an experienced adjustor, after an examination of the premises and the ashes on August 25th, testified that only a small portion of the declared furniture and effects appeared to have been present and destroyed by the fire. Based on this, and the fact that plaintiff had recently removed at least three truckloads of furniture from the house, the Court finds the value of the contents destroyed by the fire not to exceed $3,000.

8. Because the fire caused complete destruction, and because the signs that were posted prevented anyone from entering before the destruction was complete, the Court finds that the cause or origin of the fire is unknown.

9. Since the loss, plaintiff has made proper demand for payment under the policy, and defendant has declined to pay. Wherefore, plaintiff instituted this suit on December 7, 1959, in the Circuit Court of the Fifth Judicial Circuit of the State of Florida, and the same was timely removed to this Court by defendant on December 29, 1959. The defendant bases its defense on two grounds, contending (a) that coverage under the policy was suspended by the action of plaintiff in placing the signs on the house and thus increasing the hazard, and (b) that the signs, not the fire, were the direct cause of the loss. Should plaintiff be entitled to recover, defendant further asserts that he is not entitled to the full amount of

the policy covering the contents of the house.

10. There is a pending controversy in the state courts between plaintiff and the First National Bank and Trust Company of Eustis, Florida, in which plaintiff claims to have fully satisfied the mortgage by payment to one Kilpatrick, the former cashier of the bank. Public announcement of Kilpatrick's absconding was made August 10, 1959, the fire involved here occurred August 12, 1959, and on August 28, 1959, Boyd first made a demand upon the bank for satisfaction of the mortgage. For this reason should any judgment herein be recovered by plaintiff, execution should be withheld until the state court suit is finished, so that payment may then be made to the proper party under the mortgage and the mortgagee clause in the fire insurance policy herein sued upon. It is interesting to note, that although Kilpatrick left a list of the accounts from which he had taken monies, the list did not mention Mr. Boyd.

11. The Court finds that, should plaintiff be entitled to recover, the reasonable value of his counsel's services would be $100 plus 10% of the amount recovered. This would result in a recovery of $1,650 for attorney's fees, in addition to a recovery of $15,500 for losses to the insured dwelling and contents. See Fla. Statutes 1959, § 627.0127, F.S.A., the successor statute to F.S.A. § 625.08.

### Conclusions of Law.

1. Under the policy sued upon, Aetna insured the dwelling, furniture and personal property of the plaintiff, C. C. Boyd, Sr., "against all direct loss by fire * * * except as hereinafter provided * * *". One such exceptive proviso under the portion of the policy entitled "Conditions suspending or restricting insurance" was the following: "Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; or * * *".

Defendant's first defense then raises in issuable form the question of whether plaintiff's intentional act of placing the "trap gun" signs on his dwelling, without the knowledge or consent of the insurer, constituted an increase of hazard so as to suspend coverage while the signs were displayed, under the otherwise valid policy of insurance.

The facts are unique, and no reported case has been brought to my attention answering the precise question presented. The typical cases construing the "increase of hazard" standard provision involve situations where the insured has stored, used or manufactured flammable or explosive substances on the insured premises. These cases are of slight help in this situation. They do make it clear, however, that if increase of hazard is established, the fire need not result from that which operated to increase the hazard, that is to say, that the insurer is not required to prove causal connection between the alteration of the risk and the fire, since under the policy terms the coverage is suspended during the continuation of the increased hazard. See the Florida Supreme Court case of Public Fire Ins. Co. v. Crumpton et al., 110 Fla. 151, 148 So. 537, 539, where the Court stated:

"We do not hold that where it is shown that a condition increasing the hazard was allowed to obtain at the time of the fire it is necessary for the insurer to prove that the fire was result of that condition which increased the hazard. To do so would be to require that which in most cases would be impossible and would deprive the insurance company of a substantial right which it is entitled to enforce under the terms of its contract. In other words, if the insured, in violation of the terms of the contract, increases the hazard, the insured thereby takes all the risk, and if the property is destroyed while that increased hazard continues, he voluntarily releases the insurer from its obligation and sus-

pends the policy of insurance while such increased hazard continues."

The case most nearly in point on the facts is one involving a defense based on the standard "perils not included" fire policy clause. (See Lines 11 to 24 of the policy in suit for a similar provision). The case referred to is Phoenix Ins. Co. v. Mills, 1898, 77 Ill.App. 546, where the policy provision read "This company shall not be liable for loss caused directly or indirectly * * * by neglect of the insured to use all reasonable means to save or preserve the property at and after a fire." There, when a fire was discovered in the locked room in which plaintiff's goods were located and the plaintiff was immediately notified of the fire, he came to the premises and refused and forbade any person to enter the building. At this time the fire was slight and persons were present with buckets of water to extinguish it, but the plaintiff refused to allow them to enter, saying that his stock was insured. When he finally opened the door, smoke and fire were so extensive that those entering could not reach the fire to extinguish it. The case was reversed for new trial because of the insufficiency of the charges under which it was submitted to the jury, but the Court stated:

> "Outside of any clause in a policy requiring it, the duty of the insured is to do all that he reasonably can to put out a fire and to make the loss as small as may be.

> "When the insured can put out the fire in its incipiency and fails to do so, it is culpable negligence. (Citing cases)

> "While non-feasance by the insured may be culpable negligence, *preventing others from putting out a fire is actual malfeasance,* and would prevent a recovery by the wrong-doer." Italics supplied.

In the case at bar, as in the cited case, it was the act of the plaintiff insured which prevented others from saving the insured property. The policy insures against "direct loss by fire" so that one of the hazards thereunder is fire loss or loss by fire. The facts here reveal clearly that nearly all of the loss or damage could have been prevented by the volunteer fire company in the absence of plaintiff's "trap gun" signs, which as effectively deterred their entrance as the presence of an armed guard. The defendant insurer accepted the risk of insuring plaintiff's dwelling, located as it was outside the corporate limits of a town, and applied the appropriate rate for that type of dwelling in that type of location. It never accepted the risk of the destruction by fire of such dwelling with signs posted thereon which effectively prevented the extinguishment of a fire by the volunteer fire company which responded to the call. Its applied rate did not contemplate the increase of hazard brought about by the plaintiff's voluntary act, and it is my conclusion that this act was sufficient to bring into effect the increase of hazard clause relied upon by defendant's first defense.

As to the second defense, that the signs, not the fire, were the direct cause of loss, I am of the view that it is not made out by the evidence. The existence of the signs could not cause fire loss, and the fire rather than the signs was the proximate cause of the loss and was "direct loss by fire" as comprehended by the policy.

2. Judgment should be entered for the defendant Aetna Insurance Company on the ground indicated, that coverage of the policy was suspended at the time of the loss because of the increased hazard by a means within the knowledge and under the control of the insured. The purpose of the findings of fact as to the extent of loss and reasonable attorneys' fees is to permit the judgment to be entered hereunder to be reversed and rendered, in the event of reversal upon appeal, rather than reversed for new trial.